UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICIA A. STEADMAN and PATRICIA STEADMAN LTD, a corporation wholly owned by Patricia A. Steadman,

                  Plaintiffs,

-against-

CITIGROUP GLOBAL MARKETS HOLDINGS INC.,

                  Defendant.

**ORDER**

21 Civ. 2430 (PGG) (RWL)

---

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Patricia A. Steadman ("Plaintiff") and Patricia Steadman Ltd. (the "Corporate Plaintiff"), proceeding pro se, assert fraud claims against Defendant Citigroup Global Markets Holdings Inc. ("Citi"). (Cmplt. (Dkt. Nos. 1, 1-1)) Citi has moved to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to comply with the pleading standards of Fed. R. Civ. P. 8(a) and 9(b). (Dkt. No. 21) On July 6, 2021, this Court referred Citi's motion to Magistrate Judge Robert W. Lehrburger for a Report and Recommendation ("R&R"). (Dkt. No. 25) On January 24, 2022, Judge Lehrburger issued an R&R recommending that Citi's motion be granted. (R&R (Dkt. No. 35)) No objections have been filed to the R&R.

For the reasons stated below, Judge Lehrburger's R&R will be adopted in its entirety, and the Complaint will be dismissed without prejudice.

**BACKGROUND**

I. **FACTS**[1]

In March 2020, Plaintiffs purchased in the secondary market exchange traded notes issued by Citi. (Cmplt. (Dkt. No. 1-1) at 2-3; id., Exs. C-D (Dkt. No. 1-1) at 9, 11)[2] The notes Plaintiffs purchased were denominated "Velocity Shares 3x Long Crude Oil ETNs" (the "ETNs"). (Cmplt. (Dkt. No. 1-1) at 2-3) The ETNs were linked to the S&P GSCI Crude Oil Index ER (the "Index"), which tracks futures contracts for crude oil. (See id. at 1-2; Rubin Decl., Ex. A (Dkt. Nos. 23-1 to 23-6) at 5, 46)[3] The ETNs were unsecured debt obligations that were intended to be daily trading tools for sophisticated investors. They reflected a leveraged long or leveraged inverse exposure to the performance of the Index on a daily basis. (Rubin Decl., Ex. A (Dkt. Nos. 23-1 to 23-6) at 1, 3, 55) Unlike debt securities that provide interest and a guaranteed return of principal, the ETNs offered investors the right "to receive a cash payment at maturity, upon early redemption or upon acceleration, as applicable, . . . linked to the performance of the Index." (Id. at 3)

---

[1] The parties have not objected to the R&R's factual statement. Accordingly, this Court adopts Judge Lehrburger's factual account, and merely summarizes the facts below. See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true." (citation omitted)).

In resolving Defendant's motion to dismiss, this Court has accepted as true all well-pleaded factual allegations in the Complaint, and has drawn all inferences in favor of Plaintiffs. See Lotes Co. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 403 (2d Cir. 2014). The Court has also considered certain documents incorporated by reference in the Complaint, including the "Pricing Supplement" and "Press Release" described below. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

[2] Unless otherwise noted, all references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

[3] Cites to the Pricing Supplement are to the page numbers on the document itself, rather than to ECF page designations.

Citi published an 86-page document (the "Pricing Supplement"), dated March 18, 2020, in which it discloses the risks of investing in the ETNs. (Rubin Decl., Ex. A (Dkt. Nos. 23-1 to 23-6))[4] The Pricing Supplement explains that "[t]he ETNs are riskier than securities that have intermediate- or long-term investment objectives"; the ETNs "may not be suitable for investors who plan to hold them for a period more than one day"; "the ETNs should be purchased only by knowledgeable investors who understand the potential consequences of an investment linked to the Index"; the ETNs "could experience greater volatility" than other investments because the Index tracks a single commodity – crude oil; and the trading price of the ETNs is determined based on trading in the secondary market, not based on the so-called "indicative value" of the ETNs.[5] (Id. at 1, 16, 38-39, 46)

The Pricing Supplement also explains that Citi has the right to accelerate the ETNs at its "option at any time," and that the ETNs will be automatically accelerated if the Index declines to a certain level. (Id. at 13, 36) The Pricing Supplement warns that (1) payments made following acceleration could "be significantly less than the stated principal amount of the . . . ETNs and could be zero" (id. at 36, 55), and (2) during the "Optional Acceleration Valuation Period" – the time between Citi's exercise of its option to accelerate and the time of valuation – "the return on the ETNs will not be based entirely on Index fluctuations . . . and [investors] will not entirely benefit from any favorable movements in the level of the Index during this period as [exposure to the Index] declines" (id. at 13, 36).

---

[4] The full title of the Pricing Supplement is "Pricing Supplement No. 2016 – USNCH0277/A/10± and 2016 – USNCH0278/A/10± Dated March 18, 2020 (to Prospectus Supplement and Prospectus each Dated May 14, 2018): Medium-Term Senior Notes, Series N. (Rubin Decl., Ex. A (Dkt. Nos. 23-1 to 23-6) at 1)
[5] The "Indicative Value" of the ETNs refers to the "approximate . . . economic value" of the ETNs, which is calculated by reference to the Index. (Id. at 9-10)

On March 19, 2020, when "the price of oil was at a historic low" (Cmplt. (Dkt. No. 1-1) at 2), Citi issued a press release (the "Press Release") stating that it would exercise its option to accelerate the ETNs. (Id. at 3-4; Rubin Decl., Ex. B (Dkt. No. 23-7)) The Press Release states that the Optional Acceleration Valuation Period would begin on March 25, 2020 and was expected to end on March 31, 2020, and that investors would be paid on April 3, 2020. (Rubin Decl., Ex. B (Dkt. No. 23-7)) The Press Release also states that "[t]he payment upon optional acceleration is based upon a declining exposure to the ETNs' underlying index over the Optional Acceleration Valuation Period." (Id.) On March 20, 2020 – after the Press Release was issued – Plaintiffs each purchased approximately $277,000 worth of the ETNs. (Cmplt. (Dkt. No. 1-1) at 3; id., Ex. C-D (Dkt. No. 1-1) at 9-12)

On March 20, 2020, after Governor Cuomo signed executive orders mandating the reduction of in-person work in New York as a result of the COVID-19 pandemic, Citi shut down its business operations, "leaving investors in the [ETNs] unable to receive any assistance from the company." (Cmplt. (Dkt. No. 1-1) at 2-4)

On April 7, 2020, Plaintiffs' shares were redeemed pursuant to the optional acceleration invoked by Citi on March 20, 2020. At redemption, each Plaintiff incurred a loss of approximately $112,619. (Cmplt. (Dkt. No. 1-1) at 3, 6; id., Exs. C-D (Dkt. No. 1-1) at 10, 12)

## II.  PROCEDURAL HISTORY

The Complaint was filed on March 18, 2021, and asserts claims for fraud under New York law and Section 11 of the Securities Act of 1933. (Cmplt. (Dkt. No. 1-1) at 1-2, 5-6) Plaintiffs' claims are premised on the following factual allegations:

> the "3x" in the ETNs' name and description falsely represents that the ETNs will consistently track the Index by three times the Index's performance;

4

>the ETNs "faithfully tracked" the Index "for months," but on March 19, 2020, the ETNs "started to under-track the [I]ndex";
>
>Defendant had no right to accelerate the ETNs because no triggering event had occurred;
>
>the Press Release is misleading because the ETNs did not track the Index after March 31, 2020, and the redemption value was not three times the Index; and
>
>Defendant shut down its business on March 20, 2020.

(Cmplt. (Dkt. No. 1-1) at 2-4)

On May 23, 2021, this Court referred the case to Magistrate Judge Lehrburger for general pretrial supervision. (Dkt. No. 14) In orders dated April 6, 2021 and July 7, 2021, Judge Lehrburger advised the Corporate Plaintiff that it could appear in this action only through counsel. (April 6, 2021 Order (Dkt. No. 6) at 2; July 7, 2021 Order (Dkt. No. 26)); see also March 25, 2021 Order (Dkt. No. 2) at 1 n.1) No attorney has appeared on behalf of the Corporate Plaintiff.

On July 1, 2021, Defendant moved to dismiss. (Dkt. No. 21) In its motion to dismiss, Defendant contends that the claims of the Corporate Plaintiff must be dismissed because it has not appeared through counsel. Defendant further argues that the claims of both Plaintiffs must be dismissed because the Complaint does not (1) provide a "short and plain" statement of Plaintiffs' claims, as required by Fed. R. Civ. P. 8(a); and (2) state a claim under Fed. R. Civ. P. 12(b)(6). (Def. Br. (Dkt. No. 22)) Defendant contends that Plaintiffs' fraud claim under New York law fails because, inter alia, the Complaint does not identify a fraudulent statement made by Defendant – particularly given the express disclosures contained in the Pricing Supplement. (Id. at 14-19)

On July 6, 2021, this Court referred Defendant's motion to Judge Lehrburger for an R&R. (Dkt. No. 25) The motion was fully briefed on August 16, 2021 (Dkt. Nos. 22, 27,

5

28), and Judge Lehrburger heard oral argument on January 10, 2022. On January 24, 2022, Judge Lehrburger issued an R&R, recommending that Plaintiffs' claims be dismissed without prejudice. (R&R (Dkt. No. 35)) As noted above, no objections to the R&R have been filed.

### III.     THE REPORT AND RECOMMENDATION

As an initial matter, Judge Lehrburger finds that the Corporate Plaintiff's claims must be dismissed because of its failure to appear through counsel. (Id. at 7-8)

As to Defendant's assertion that the Complaint does not "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), Judge Lehrburger concludes that dismissal is not warranted, because "the Complaint is suitably plain and short." (Id. at 9) The Complaint "'is not the incomprehensible labyrinthian prolixity of unrelated and vituperative charges that Rule 8 was intended to curb.'" (Id. (quoting Harnage v. Lightner, 916 F.3d 138, 142 (2d Cir. 2019) (quotation marks omitted)))

As to Defendant's Rule 12(b)(6) motion, Judge Lehrburger accurately states the applicable standard:

> To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). But "even pro se plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level,'" Martinez v. Ravikumar, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1965), and must allege "'enough facts to state a claim to relief that is plausible on its face.'" Perry v. Mary Ann Liebert, Inc., 765 F. App'x 470, 473 (2d Cir. 2019) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. at 1960).

(Id. at 10)

As to Plaintiff's common law fraud claim, Judge Lehrburger also accurately sets forth the pleading standard under New York law[6]:

> "Under New York Law, plaintiffs must allege five elements to state a common law fraud claim: (1) a material misrepresentation or omission of fact (2) made by defendants with knowledge of its falsity (3) and intent to defraud, which (4) plaintiffs reasonably relied on, (5) resulting in damage to plaintiffs." Santana v. Adler, No. 17-CV-06147, 2018 WL 2172699, at *9 (S.D.N.Y. Mar. 26, 2018); Premium Mortgage Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009).

(Id. (quotation marks omitted)) Judge Lehrburger further notes that Plaintiffs' fraud claim must "meet the heightened pleading standard for fraud required by Federal Rule of Civil Procedure 9(b)." (Id. at 11 n.9)

Judge Lehrburger then considers the factual allegations on which Plaintiffs' fraud claim is premised:

> that the "3x" in the ETNs' name and description falsely represents that the ETNs will consistently track the Index by three times the Index's performance;
>
> that the ETNs "faithfully tracked" the Index "for months," but on March 19, 2020, the ETNs "started to under-track the [I]ndex";
>
> that Defendant had no right to accelerate the ETNs because no triggering event occurred;
>
> that the Press Release is misleading because the ETNs did not track the Index after March 31, 2020, and the redemption value was not three times the Index; and
>
> that Defendant shut down its business on March 20, 2020.

(Cmplt. (Dkt. No. 1-1) at 2-4); see also R&R (Dkt. No. 35) at 11-17)

---

[6] Defendant contends that New York law applies to Plaintiffs' common law fraud claim because Plaintiffs allege that Defendant made use of the New York Stock Exchange in furtherance of the alleged fraud. (Def. Br. (Dkt. No. 22) at 20 n.14 (citing, inter alia, TeeVee Toons v. Gerhard Schubert GmbH, No. 00 Civ. 5189 (RCC), 2006 WL 2463537, at *14 (S.D.N.Y. Aug. 23, 2006))) Plaintiffs also reference "New York State law" in the complaint. (Cmplt. (Dkt. No. 1-1) at 2) Accordingly, this Court concludes that Judge Lehrburger properly applied New York law to Plaintiffs' common law fraud claim.

7

As an initial matter, Judge Lehrburger finds that the first element of fraud under New York law – a material misrepresentation – is not adequately alleged, because "Plaintiffs' fraud allegations are foreclosed by the express warnings and disclosures in the Pricing Supplement [and Press Release,] which Plaintiffs reference in the Complaint." (See R&R (Dkt. No. 35) at 11-14 (citing, inter alia, Y-GAR Capital LLC v. Credit Suisse Group AG, No. 19-CV-2827 (AT), 2020 WL 71163, at *4 (S.D.N.Y. Jan. 2, 2020) ("There cannot be a material misstatement or omission if defendants' statements explicitly disclosed the very risks about which plaintiff claims to have been misled.")) As to Plaintiffs' claim that the "3x" in the ETNs' name and description is deceptive (Cmplt. (Dkt. No. 1-1) at 3; Pltf. Opp. (Dkt. No. 27) at 3-4), Judge Lehrburger notes that "the Pricing Supplement explains that '3x' is tied to payment and value at maturity, redemption, or acceleration," but is not a "representation that the ETN on a daily basis will rise or fall three times the extent to which the Index rises or falls." (R&R (Dkt. No. 35) at 13 (citing Rubin Decl., Ex. A (Dkt. Nos. 23-1 to 23-6) at 3, 9))

Judge Lehrburger likewise concludes that the Press Release does not contain misleading statements, because it expressly warns that "payment upon optional acceleration is based upon a declining exposure to the ETNs' underlying index over the Optional Acceleration Valuation Period," and that as a result, the redemption value at the end of the acceleration period "would be even less likely to fully reflect the Index." (Id. at 14 (citing Rubin Decl., Ex. B (Dkt. No. 23-7))) In this regard, Judge Lehrburger notes that Plaintiffs purchased the ETNs "precisely at a time when their value was likely to be most volatile" – in March 2020, at the beginning of the COVID-19 pandemic. (Id.)

Judge Lehrburger further finds that the Complaint's allegations regarding Defendant's acceleration of the ETNs and the shutting down of its operations in March 2020 are

8

not sufficient to allege a fraud claim. The Pricing Supplement explicitly states that Defendant retains an option to accelerate the ETNs, even where the ETNs have not reached the threshold for triggering an automatic acceleration. (Id. (citing Rubin Decl., Ex. A (Dkt. Nos. 23-1 to 23-6) at 13)) Judge Lehrburger concludes that "a far more plausible explanation" than fraud for Defendant's decision to exercise its acceleration option – and to cease its business operations – is that the COVID-19 pandemic led to in-person business closures and historically low oil prices. (Id. at 15 n.10)

    Judge Lehrburger also finds that Plaintiffs have not adequately pled scienter or reliance. He notes that the allegation that someone intentionally interfered with the "computer" that was tracking the Index (Cmplt. (Dkt. No. 1-1) at 3) "is far too speculative and conclusory to create a plausible cause of action." (R&R (Dkt. No. 35) at 16 (citing In re Fannie Mae 2008 Securities Litigation, 891 F. Supp. 2d 458, 470 (S.D.N.Y. 2012), aff'd, 525 F. App'x 16 (2d Cir. 2013) and Yencho v. Chase Home Finance LLC, No. 14-CV-230 (NSR), 2015 WL 127721, at *3 (S.D.N.Y. Jan. 8, 2015))) As to reliance, Judge Lehrburger notes that Plaintiffs' "own pleading" acknowledges that Plaintiffs purchased the ETNs on March 20, 2020 (Cmplt. (Dkt. No. 1-1) at 3) – a day after the Press Release announced that the payment upon acceleration would be based on decreased exposure to the Index (Rubin Decl., Ex. B (Dkt. No. 23-7)) – and thus, Plaintiffs could not have "reasonably relied on representations concerning correlation with the Index made prior to that time." (R&R (Dkt. No. 35) at 17)

    For all these reasons, Judge Lehrburger recommends that Plaintiffs' common law fraud claim be dismissed for failure to state a claim.

    As to Plaintiffs' claim under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77a et seq, Judge Lehrburger accurately recites the pleading standard:

9

> To state a claim under Section 11 . . . , a plaintiff must allege that "(1) it purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." Y-GAR Capital LLC, 2020 WL 71163, at *3.  It "is not sufficient that, at some point after the registration statement became effective, some subsequent event made it no longer accurate." Jiajia Luo v. Sogou, Inc., 465 F. Supp.3d 393, 406 (S.D.N.Y. 2020).

(Id.)

Here, the Complaint does not identify a registration statement that was false and misleading at the time the registration statement became effective. (Id. at 18-19)  In reaching this conclusion, Judge Lehrburger points to express disclosures in the Pricing Supplement, and to the Complaint's assertion that the prospectus descriptions of the ETNs "***became*** untrue statements of facts" after March 19, 2020. (Id. at 18 (citing Cmplt. (Dkt. No. 1-1) ¶ 2) (emphasis in R&R))

For these reasons, Judge Lehrburger recommends that Plaintiffs' claim under Section 11 of the Securities Act be dismissed for failure to state a claim.[7]

## DISCUSSION

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Where, as here, no objections have been filed to a magistrate judge's report and recommendation, "a district court need only satisfy itself that there

---

[7] In recommending dismissal, Judge Lehrburger notes that claims against Defendant similar to those raised here have been dismissed under Rule 12(b)(6). (R&R (Dkt. No. 35) at 19 n.12 (citing Ravi v. Citigroup Global Markets Holdings, Inc., 21 Civ. 2223 (GHW), Jan. 10, 2022 Order (Dkt. No. 43) (adopting R&R and granting motion to dismiss); see also Thomas v. Citigroup Global Markets Holdings Inc., 21 Civ. 3673 (VEC) (DF), March 1, 2022 R&R (Dkt. No. 29) (recommending that complaint be dismissed for failure to state a claim))

is no 'clear error on the face of the record' in order to accept the recommendation." Austin v. Lynch, No. 10 Civ. 7534 (JPO) (GWG), 2011 WL 6399622, at *1 (S.D.N.Y. Dec. 20, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note).  Moreover, "a party generally waives judicial review of an issue when he or she fails to make timely objection to a magistrate judge's report, as long as all parties receive clear notice of the consequences of their failure to object." DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983) ("When a party fails to object timely to a magistrate's recommended decision, it waives any right to further judicial review of that decision." (citation omitted)).

Here, the R&R cites the requirement that "[p]ursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days to file written objections to this Report and Recommendation.  (R&R (Dkt. No. 35) at 19) The R&R further states that "[f]ailure to file objections will result in a waiver of objections and preclude appellate review."  (Id. at 20 (emphasis omitted))  Despite clear warning that a failure to file objections would result in a waiver of judicial review, neither side filed objections to Judge Lehrburger's R&R.

Because neither side filed objections to Judge Lehrburger's R&R, the parties have waived judicial review.  This Court has, however, reviewed the R&R and finds it to be thorough, well-reasoned, and free of any clear error.

As an initial matter, the Corporate Plaintiff's claims must be dismissed, because a corporate entity cannot appear other than through counsel.  See Lattanzio v. COMTA, 481 F.3d 137, 140 (2d Cir. 2007) ("[A] limited liability company . . . may appear in federal court only through a licensed attorney."); United States ex rel. Mergent Servs. v. Flaherty, 540 F.3d 89, 92

11

(2d Cir. 2008) ("[A] layman may not represent a corporation even if the sole shareholder." (citations omitted)); see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 202-03 (1993).  Where, as here, a plaintiff corporation has been repeatedly warned that its claim will be dismissed absent retention of counsel, and it has failed to appear through counsel, dismissal is appropriate.  See, e.g., Liberty Synergistics, Inc. v. Microflo, Ltd., No. 11CV00523JMASIL, 2017 WL 9512403, at *2 (E.D.N.Y. May 11, 2017), report and recommendation adopted, No. 11CV523MKBSIL, 2017 WL 4119268 (E.D.N.Y. Sept. 18, 2017) (dismissing corporate plaintiff's claims under Fed. R. Civ. P. 41(b) where it had failed to appear through counsel).

This Court likewise agrees with Judge Lehrburger that the Complaint – although it fails to state a claim – is sufficient under Fed. R. Civ. P. 8.

Finally, for all the reasons stated by Judge Lehrburger, neither Plaintiffs' common law fraud claim nor their claim under Section 11 is sufficiently pled.  Accordingly, the Complaint will be dismissed.

Judge Lehrburger recommends that leave to amend be granted.  (R&R (Dkt. No. 35) at 19)  District courts "ha[ve] broad discretion in determining whether to grant leave to amend."  Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).  Leave to amend may properly be denied in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  The Second Circuit has cautioned that district courts "'should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the

Case 1:21-cv-02430-PGG-RWL   Document 38   Filed 03/15/22   Page 13 of 13

complaint gives any indication that a valid claim might be stated.'" Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly] ple[d]," there is "a strong preference for allowing plaintiffs to amend." In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., No. 08 MDL 1963, 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).

For these reasons, this Court will likewise adopt Judge Lehrburger's recommendation that leave to amend be granted.

## CONCLUSION

For the reasons stated above, the R&R is adopted, and the Complaint is dismissed. Any motion for leave to file an amended complaint will be submitted by **April 1, 2022**. The proposed amended complaint is to be attached as an exhibit to the motion. The Corporate Plaintiff cannot assert any claim in an amended complaint absent the filing of a notice of appearance by counsel. The Clerk of Court is directed to terminate the motion (Dkt. No. 21).

Dated: New York, New York
       March 14, 2022                    SO ORDERED.

                                         *Paul G. Gardephe*
                                         Paul G. Gardephe
                                         United States District Judge